IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRANK H. KRUSE, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0212-WS-B |
| | ) |
| CORIZON, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the motions of Corizon, Inc. ("Corizon"), and of Alicia Callaghan and Marcia Joiner, for summary judgment. (Docs. 95, 97). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 96, 98, 113, 115, 116, 120-22), and the motions are ripe for resolution. After careful consideration, the Court concludes that the motions are due to be granted in part and denied in part.

**BACKGROUND**

According to the complaint, (Doc. 1), on the evening of Saturday, April 10, 2010, the plaintiff's decedent, James Michael Hall, was arrested on minor charges after exhibiting psychotic behavior. Various correctional officers employed tasers against the plaintiff, still exhibiting such behavior, on Saturday night, on the afternoon of Sunday, April 11, and again on the morning of Monday, April 12. Hall stopped breathing shortly after the third episode and expired without regaining consciousness.[1]

---

[1] The complaint names 15 correctional officers as defendants. The Court previously dismissed nine of them on the parties' joint motion. (Doc. 109). The motion for summary judgment filed by the remaining six defendants are addressed in a separate order.

According to the complaint, Corizon is under contract to provide medical care for inmates at the Mobile County Metro Jail facility. Callaghan is a nurse and Joiner a mental health worker, both employed by Corizon. Callaghan saw Hall after the first use of force Saturday night, and Joiner saw Hall on Sunday.[2]

The counts asserted against the medical defendants are as follows:

- Count One        Unconstitutional use of force (Callaghan)
- Count Two        Deliberate indifference to serious medical needs (Joiner)[3]
- Count Three      Deliberate indifference (Corizon)
- Count Four       Assault and battery/wrongful death (Callaghan)
- Count Five       Negligence/wrongful death (all three)
- Count Six        Medical negligence (all three)
- Count Seven      Medical wantonness (all three)

(Doc. 1 at 14-28).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving

---

[2] The complaint names three other health care workers, who have been dismissed on the plaintiff's request. (Doc. 55).

[3] Callaghan is nominally a defendant under Count Two, but the plaintiff "does not oppose Defendant Alicia Callaghan's Motion for Summary Judgment on the basis of deliberate indifference." (Doc. 116 at 5). She is therefore entitled to summary judgment as to this claim without consideration of her motion.

2

party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[4] Accordingly, the Court limits its review to the

---

[4] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); accord *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the

exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced. [5]

## I. Excessive Force.

Callaghan does not address this claim in any fashion.  She therefore is not entitled to summary judgment as to this claim.[6]

## II. Deliberate Indifference - Joiner.

"Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners."  *Harper v. Lawrence County*, 592

---

referenced portions of these [summary judgment] materials, but is not required to do so.").

[5] In addition to their briefs, the defendants filed a 44-page statement of undisputed facts.  (Doc. 99).  (This massive document did not even contain numbered paragraphs, although the plaintiff submitted a numbered version, (Doc. 118), so that he could coherently respond to the statement.)  The defendants' briefs then invite the Court generally to "See Statement of Undisputed Facts attached to the Motion for Summary Judgment and Exhibits attached thereto."  (Doc. 96 at 17; Doc. 98 at 3).  At other times, the briefs announce the existence or absence of facts without even this general reference.  "Judges are not like pigs, hunting for truffles buried in briefs."  *Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009) (internal quotes omitted).  The defendants assume the risk that their suboptimal presentation fails to draw the Court's attention to the precise portion of their statement of facts which they have in mind.

[6] The evidence cited by the plaintiff does not indicate that Callaghan personally used force against Hall or that she participated in, directed or ratified the use of force by the correctional officers.  Should the plaintiff pursue this claim in violation of Rule 11, he and/or his counsel may be subject to sanction as provided in that rule.

F.3d 1227, 1230 n.3 (11th Cir. 2010) (internal quotes omitted).  But claims by a pretrial detainee "are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment."  *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal quotes omitted).

"To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show:  (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Craig*, 643 F.3d at 1310 (internal quotes omitted).  Joiner does not challenge the plaintiff's ability to establish the first element,[7] or the third,[8] but she does argue he cannot establish the second.

"To satisfy the [second,] subjective element of deliberate indifference to [Hall's] serious medical need, Plaintiff must prove three things:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."  *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotes omitted).

**A.  Subjective Knowledge of a Risk of Serious Harm.**

To satisfy the first prong of the second element, the degree of risk must be "substantial."  *E.g., Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).  In order to have subjective knowledge, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

---

[7] Joiner explains the method for determining if a serious medical need exists, (Doc. 96 at 6-7), but she does not argue that Hall had no such need.

[8] Joiner's argument as to Count Two is limited to the proposition that the plaintiff "has failed to present any evidence of deliberate indifference."  (Doc. 96 at 2).  The next section of her brief addresses causation, but she argues under this section only that she is "entitled to summary judgment as to Plaintiff's medical malpractice claims," (*id*. at 22), that is, Counts Six and Seven.  Further, her argument as to causation is limited to state proof requirements under the Alabama Medical Liability Act, with no mention of federal law.  (*Id*. at 18-19).

exists, and [s]he must also draw the inference." *Rodriguez v. Secretary for Department of Corrections*, 508 F.3d 611, 617 (11th Cir. 2007) (internal quotes omitted). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." *Harper*, 592 F.2d at 1234 (internal quotes omitted).

Although the plaintiff must prove the defendant was subjectively aware of a substantial risk of serious harm, such awareness is "subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007) (internal quotes omitted).

### 1. Awareness of the facts.

Joiner devotes ten pages of her brief to stating (and re-stating, repeatedly) the foregoing general legal principles and additional, similar ones. (Doc. 96 at 3-12). She then offers a single, unexplained sentence of argument: "There is nothing in the record to indicate that [Joiner] had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Mr. Hall and that [Joiner], thereafter, ignored that risk." (*Id*. at 13). This lonely declaration passed no burden to the plaintiff to respond to it or to the Court to address it,[9] but the assertion is in any event incorrect.

The evidence of Joiner's knowledge, viewed in the light most favorable to the plaintiff, is as follows. Joiner interviewed Hall Sunday morning. She was told that Hall had been involved in an altercation with a correctional officer during the

---

[9] *See Clark*, 929 F.2d at 608 ("Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."); *cf. Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (on appeal, "[a] passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it").

night, had been "acting out" and "combative," and had been moved to the suicide wing at the direction of Callaghan. (Doc. 116 at 3; Doc. 117, ¶ 58; Doc. 118, Exhibit 1, ¶ 58; Joiner Deposition II at 20-21, 35).

While Joiner says that Hall seemed perfectly normal during her interview of him, there is evidence she left the interview with the statement that Hall "might be mentally ill." (Doc. 113, Exhibit A at 17). She approved Hall's transfer from the suicide wing to the administrative segregation wing (due to his altercation the previous night), but she also referred him to the staff psychiatrist for further evaluation on Monday. (Joiner Deposition II at 34-35).

A few hours later, several correctional officers attempted to move Hall from the suicide wing to administrative segregation. There is evidence Joiner was informed that, during this move, Hall was "talking erratic somewhat out of his head and he refused to keep his uniform on" because "it smells like smoke." (Doc. 116 at 3; Doc. 117, ¶¶ 19, 60; Houston Deposition at 58-60; Doc. 113, Exhibit A at 17).[10]

Some time after he was moved, a correctional officer observed Hall in his cell, naked, hitting his head against the wall and talking about God. There is evidence that Joiner was advised of these facts. (Doc. 116 at 3; Doc. 117, ¶¶ 19, 60; Turner Deposition at 74-75).[11]

---

[10] Joiner attacks Houston's memory, (Doc. 121 at 9), but that is fodder for cross-examination, not a basis for ignoring his testimony on motion for summary judgment.

[11] Joiner suggests that Turner could not know what she was told because he does not know who told her. (Doc. 121 at 9). This is a non sequitur, since Turner could have witnessed the conversation without recalling who participated. Again, this is grist for cross-examination, not grounds to disregard Turner's testimony on motion for summary judgment.

Joiner also points to her testimony that she observed and spoke with Hall after this incident and that he seemed fine. However, in her first deposition Joiner testified repeatedly that she did *not* see Hall after her Sunday morning interview. (Doc. 117, ¶ 19; Joiner Deposition I at 47-48). On motion for summary judgment, the Court must credit the version most favorable to the plaintiff.

Thus, as of Sunday morning, Joiner knew that Hall had been in an altercation with a correctional officer, had been acting out and had been placed in the suicide wing on orders of a registered nurse, and Joiner recognized by this point that Hall might be mentally ill. As of Sunday afternoon, Joiner also knew that Hall insisted on remaining naked because his prison garb smelled like smoke, that he was talking out of his head, and that he was banging his head against the wall. These facts, of which Joiner was aware, plainly would allow the inference to be drawn that Hall posed a substantial risk of serious harm to himself. *See Thomas v. Bryant*, 614 F.3d 1288, 1300-01, 1309, 1316 (11th Cir. 2010) (inmate suffered "serious head injuries" requiring emergency room treatment from banging his head on his steel bunk and cell door, which conduct constituted "self-injurious behavior" reflecting that he was "at risk for … self-injury"). Corizon's staff psychiatrist agrees that these facts (along with growling, babbling, talking with God, Jesus and angels, staring at a wall and failing to respond to tasers) reflect a patient posing an "extreme risk of danger to himself." (Smith Deposition at 62-63).

### 2. Drawing of the inference.

As noted above, the plaintiff must show not only Joiner's awareness of facts from which an inference could be drawn that Hall posed a substantial risk of serious harm to himself, but also that she actually drew that inference. Joiner's entire argument on this score is her one-sentence ipse dixit that the plaintiff "cannot present any evidence which indicates that [she] knew that the manner in which [she was] treating Hall was creating a substantial risk to his health." (Doc. 96 at 16). As noted previously, a movant cannot shift the burden to the plaintiff simply by denying he can prove his claim but must herself point to evidence either negating the assertion that she disregarded the risk or reflecting the plaintiff's inability to support the assertion. Joiner's one-liner accomplishes neither and thus cannot sustain her argument.

At any rate, and as noted previously, a defendant's subjective awareness may be established by circumstantial evidence, including the obviousness of the risk. The danger that a mentally ill person, just released from suicide watch, who is banging his head against the wall of his cell, will suffer serious harm from that activity would seem obvious. Certainly the *Thomas* Court thought it unremarkable that banging one's head on steel doors is "self-injurious behavior" reflecting a "risk … for self-injury." 614 F.3d at 1301, 1309. Dr. Smith thought it clear that such behavior by a mentally disturbed person presents an "extreme risk of danger" and, although Joiner is not a psychiatrist like Dr. Smith, she is a counselor or therapist with the ability to present a provisional diagnosis to him. (Joiner Deposition II at 9). Indeed, it is her job is "to determine which inmates are psychotic or suffering from some mental illness and are a danger to themselves or others." (Joiner Deposition I at 27). The danger to Hall thus should have appeared even more obvious to her than to a layperson. In short, even had she properly raised the issue, the Court would conclude for purposes of Joiner's motion that the plaintiff has presented a jury question as to whether she subjectively realized Hall posed a substantial risk of serious harm to himself.

### B. Disregard of the Risk.

With familiar superficiality, Joiner offers only one unexplained sentence that "[t]here is nothing in the record to indicate that [she] ignored that risk." (Doc. 96 at 13). For reasons already stated, such ipse dixits pass no burden to the plaintiff or the Court.

At any rate, there is plainly evidence that Joiner disregarded the substantial risk of serious harm to Hall. One "disregards that risk by failing to take reasonable measures to abate it." *Chandler v. Crosby*, 379 F.3d 1278, 1296 (11th Cir. 2004) (internal quotes omitted); *accord Harper*, 592 F.3d at 1235. Informed that Hall was in the process of banging his head against the wall while buck naked and talking about God, the plaintiff's evidence is that Joiner did … nothing at all.

9

It would be difficult to disregard a risk more completely than that. *See Bozeman*, 422 F.3d at 1273 (defendants disregarded the risk to an inmate, who was unconscious and not breathing, by failing to check on him, call for help, administer CPR, "or do anything else to help").

### C. Conduct More than Gross Negligence.

Joiner's single argument is that "Plaintiff's arguments amount to no more than disagreement with the manner in which Hall was treated," and that, because she treated Hall, "Plaintiff's position that a different mode of medical treatment should have been provided to Hall does not and cannot amount to deliberate indifference." (Doc. 96 at 16-17). She bases this position on *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999), which described "a claim that different treatment should have been provided" as "tantamount to a medical judgment call," as opposed to a claim that "the treatment provided was grossly inadequate, amounting to no treatment at all." *Id.* at 1259. But whatever the import of *McElligott*, it cannot assist Joiner because, under the plaintiff's evidence, she provided no treatment at all; she simply interviewed Hall, directed his release from suicide watch (thereby making it easier for him to harm himself)[12] and then, when he engaged in the "self-injurious behavior" of banging his head against his cell wall, did nothing. To the uncertain extent she suggests that making an appointment with a psychiatrist constitutes treatment, she is plainly wrong; an appointment may contemplate future treatment but of itself does nothing to treat a condition or abate a risk of harm.[13]

---

[12] While correctional officers monitor both the suicide and the administrative segregation wing every fifteen minutes, in the suicide wing there are also inmates assigned to continuously patrol and observe those housed there. (Doc. 117, ¶ 59; Doc. 118, ¶ 59; Joiner II Deposition at 42-43).

[13] Corizon's brief asserts that the plaintiff's experts concede Joiner never refused to see or treat Hall. (Doc. 98 at 3). Since Joiner did not adopt Corizon's brief, its position is irrelevant to her motion. At any rate, the evidence cited by Corizon does not

As part of her lengthy litany of legal principles, Joiner cites a case setting forth a test for determining when delay in treatment rises above gross negligence. (Doc. 96 at 8-9). However, she does not argue that the plaintiff cannot satisfy this test, and the Court will not construct such an argument on her behalf.

### III. Deliberate Indifference – Corizon.

Corizon recognizes that, although it is a private entity, it is performing a function traditionally the exclusive prerogative of the government and thus may be held liable for constitutional violations under Section 1983. (Doc. 120 at 2). *See Fields v. Corizon Health, Inc.*, 490 Fed. Appx. 174, 181-82 (11th Cir. 2012).

Corizon adopts Joiner's brief. (Doc. 98 at 3). Because Joiner is not entitled to summary judgment, her brief does not advance her employer's cause.

"[A] municipality or entity like [Corizon] is liable only where its custom or policy causes the constitutional injury." *Fields*, 490 Fed. Appx. at 182. Corizon's sole argument is that the plaintiff has offered no evidence of a policy or custom that contributed to Hall's death. (Doc. 98 at 1-3).

The policy identified by the plaintiff is one of neither staffing the jail with a psychiatrist on weekends nor having one on call in case of emergency. (Doc. 115 at 2, 17). Corizon complains there is no evidence of any such policy, but Dr. Smith testified that at all relevant times he has been the only psychiatrist at the jail, that he has worked only 20 hours a week (on Mondays, Tuesdays and Fridays), and that he has not been on call when not at work. (Doc. 115 at 2, 11; Smith Deposition at 9-10, 24).[14] Corizon does not acknowledge the plaintiff's invocation

---

support this proposition; at most, the plaintiff's expert did not deny that Joiner performed an assessment of Hall on Sunday morning, while expressing no opinion whether Joiner treated Hall's condition, then or later. (Doc. 118, ¶ 61; Burns Deposition at 102).

[14] The only time another psychiatrist would work was if Smith was on vacation. (Smith Deposition at 10). A Dr. Tageldin also worked, but only "during the past year," (*id*.), that is, during 2012. (*Id*. at 2). And Dr. Tageldin merely filled in for Smith, so that Smith could cut back his hours. (*Id*. at 10).

11

of this testimony, much less explain how it could fail to be evidence of Corizon's policy or custom.[15]

Instead, Corizon notes that Dr. Smith's schedule is required by the contract between Corizon and Mobile County. (Doc. 120 at 8). This assertion is both incorrect and unhelpful to Corizon. It is incorrect because, while the contract requires Corizon to provide a psychiatrist on site 20 hours a week, it does not forbid Corizon to provide additional hours. (*Id*., Exhibit A at 6, 19).[16] And the contract neither forbids nor requires a psychiatrist to be on call on weekends. It is unhelpful because, even if the contract precluded a psychiatrist from being on site or on call over weekends, by agreeing to such a term Corizon would have thereby established its policy.

The only remaining question unanswered from Corizon's limited argument is whether there is evidence that Corizon's failure to have Dr. Smith on site or on call Sunday afternoon contributed to Hall's death Monday morning. The plaintiff has identified, and the Court can detect, no evidence that Joiner would have requested Dr. Smith's assistance had he been on call. Without such evidence, the failure to have Dr. Smith on call could not easily have contributed to Hall's death.

But the story is different with respect to the failure to have Dr. Smith on site. As noted, Joiner referred Hall to Dr. Smith for further evaluation on Monday, the next time Dr. Smith would be at the jail. This evidence supports a reasonable

---

[15] "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality …. A custom is a practice that is so settled and permanent that it takes on the force of law." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 n.17 (11th Cir. 2012) (internal quotes omitted).

[16] Because Corizon's compensation is a flat annual fee, to be modified during the contract term only if inmate population departs from certain parameters, (Doc. 120, Exhibit A at 12), Corizon presumably would not be paid extra for providing additional hours. But a financial disincentive not to provide weekend psychiatric services is hardly a preclusion of such services.

inference that Joiner would have referred Hall to see Dr. Smith on Sunday had he been present that day.

There is, moreover, evidence that Hall would not have died on Monday morning had Dr. Smith been present on Sunday afternoon. The plaintiff's expert testified that, on the morning he died, Hall experienced an episode of excited delirium, which caused his heart to go into arrhythmia and then stop.[17] Excited delirium consists of a psychosis or mental illness in combination with the sympathetic nervous system's fight-or-flight response to stimuli. (Turner Deposition at 25-26, 30-31).[18] Dr. Turner testified that excited delirium can be determined from the person's bizarre behavior consistent with psychosis. (*Id*. at 31).

Dr. Smith testified that a person displaying the symptoms of which Joiner was aware (and who also had been growling, babbling, talking with celestial or divine beings, staring at a wall and not responding to tasers) probably would be diagnosed as psychotic. (Smith Deposition at 65). While Dr. Smith might not have received the parenthetical information from Joiner had he been on site, a proper evaluation by him would have included interviewing the correctional officers who had observed Hall (and who had this information), review of the logs and medical documentation, and a more extensive examination of Hall himself. (Burns Deposition at 103-04). There is thus a reasonable inference that Dr. Smith would have become aware of this material and that he would have concluded that Hall was psychotic.

Dr. Smith further testified that a person displaying psychotic tendencies needs urgent treatment, that such treatment includes medications available at the

---

[17] Dr. Turner opined that Hall's physical struggle with multiple correctional officers Monday morning, including repeated tasings of Hall, contributed to Hall's stress and thus to his death. (Turner Deposition at 28-29).

[18] *See generally Mann v. Taser International, Inc.*, 588 F.3d 1291, 1299 n.4 (11th Cir. 2009) (discussing the causes and symptoms of excited delirium).

13

jail pharmacy, and that such medications probably would correct the symptoms. (Smith Deposition at 65-66). On Monday morning, Dr. Smith ordered the administration of Haldol and Ativan, which calmed Hall in the minutes before he died. (Burns Deposition at 115). There is thus a reasonable inference that Dr. Smith would have administered these or similar medications on Sunday and that they would have prevented the excited delirium that caused Hall's death.

Corizon, which contents itself with sweeping denials of causation, does not address this causal chain or explain why it might be insufficient to fix liability on Corizon. As noted previously, the Court will not develop arguments on Corizon's behalf.

## IV. Assault and Battery/Wrongful Death.

As with Count One, Callaghan ignores Count Four. As with Count One, she is thus not entitled to summary judgment on this claim. As with Count One, Rule 11 remains available should the plaintiff pursue this claim with no evidence or law to support it.

## V. Negligence/Wrongful Death.

The defendants do not address this claim. As a result, they cannot obtain summary judgment.

## VI. Medical Negligence/Wantonness.

Counts Six and Seven are brought under the Alabama Medical Liability Act ("AMLA"). The defendants, or subsets of them, assert several arguments in opposition to these claims.

### A. Standard of Care.

"[I]n a medical-malpractice action, the plaintiff ordinarily is required to present expert testimony as to the relevant standard of care." *Cobb v. Fisher*, 20

So. 3d 1253, 1257 (Ala. 2009) (internal quotes omitted).  The plaintiff relies on Dr. Burns for this testimony.  Joiner, however, argues that Dr. Burns is not a "similarly situated health care provider" relative to her, as required by AMLA, Ala. Code § 6-5-548(e).  (Doc. 96 at 22-24).  Joiner provides only a brief, superficial defense of her position, and her reply brief completely ignores the plaintiff's thorough explanation of why Dr. Burns satisfies the statute.  (Doc. 116 at 13-17).  As Joiner has not asserted, much less demonstrated, that the plaintiff's interpretation of the statute and its application to this case are incorrect, the Court will not go searching for reasons to reject his position on her behalf.

### B.  Causation.

"A plaintiff in a medical-malpractice action must also present expert testimony establishing a causal connection between the defendant's act or omission constituting the alleged breach and the injury suffered by the plaintiff." *Cobb,* 20 So. 3d at 1257 (internal quotes omitted).  According to Callaghan and Joiner, the plaintiff must produce evidence "that the breach probably was a contributing cause of the injury or death."  (Doc. 96 at 17-18, 19).  These defendants argue the plaintiff cannot do so because his expert witness, Dr. Turner, declined to opine that their conduct had anything to do with Hall's death.  (*Id.* at 19, 21).

The plaintiff points out that he has two medical experts, the second of which opined that, had Callaghan and Joiner not breached the standard of care, Hall would have received a proper medical and/or psychiatric evaluation and would have been given medications that would have calmed him and prevented the episode that on Monday morning claimed his life.  (Doc. 116 at 8-9; Burns Report at 4-5).

In their reply brief, Callaghan and Joiner assert that Dr. Burns' opinion is speculative and "wildly inaccurate."  (Doc. 121 at 4).  In support, they offer the affidavit of Corizon's mental health director, who states that he was on call at the

15

relevant time and that, even had Callaghan or Joiner called him, he would not have summoned either medical or psychiatric help, thereby preventing Hall from receiving the medication he needed. (*Id.*, Exhibit C). There are at least two fatal problems with this argument.

The first is that it comes too late to be considered. "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining the underlying rationale). Corizon offers no reason the Court should depart from this well-established rule.[19]

The second is that the medical director's testimony is based on the assumption that he would have received from Joiner only the limited information she admits possessing. As discussed in Part II.A.1, however, there is evidence that Joiner actually possessed substantial additional information concerning Hall. Because the medical director does not deny that he would have summoned medical or psychiatric help had he received all this additional information as well, his affidavit would be insufficient to negate causation even had it been timely submitted.

Corizon argues that, if there is no evidence of causation as to Callaghan and Joiner, then there can be no evidence of causation as to it. (Doc. 98 at 3-4). Since the causation argument of Callaghan and Joiner fails, the derivative causation argument of Corizon necessarily fails as well.

---

[19] In support of their argument, Callaghan and Joiner cite Dr. Burns' declaration. (Doc. 121 at 4). Her declaration was executed barely a month ago, (Doc. 118, Exhibit 8), after Callaghan and Joiner moved for summary judgment. Were the declaration the only source of Dr. Burns' opinions, their failure to address those opinions in their principal brief might be understandable, since they would have been unaware of those opinions at that time. But Dr. Burns' declaration merely repeats, in essentially verbatim fashion, the same opinions she expressed in her expert report, (*id.*, Exhibit 9), which the defendants received in December 2012. (Doc. 48). Callaghan and Joiner, having been fully apprised of Dr. Burns' opinions well in advance, ignored those opinions at their peril.

### C. Carol Costello.

Carol Costello was employed by Corizon as a nurse in April 2010. According to Dr. Burns, Costello failed to assess Hall's mental condition adequately following his transfer from the suicide wing to the administrative segregation wing and failed to make an immediate referral of Hall for assessment and treatment despite his obvious signs of severe psychiatric illness. (Burns Report at 4). Corizon argues that the plaintiff should be precluded from relying on any act or omission of Costello to establish Corizon's liability, on the grounds that he did not comply with AMLA's pleading requirements. (Doc. 98 at 4-7).

> The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. … Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551.[20]

The sole reference in the 28-page complaint to any health care provider other than Callaghan or Joiner states only that, after a correctional officer found Hall banging his head on the wall, "[a] nurse was called and also observed a mark on Hall's forehead. Hall refused to allow the nurse into his cell." (Doc. 1, ¶ 25). Corizon acknowledges that there is evidence this unnamed nurse is Costello. (Doc. 120 at 12; Doc. 118, Exhibit 4; Doc. 113, Exhibit A at 18). Corizon argues that the complaint's failure to mention her by name is fatal under Section 6-5-551, (Doc. 98 at 4, 5, 7), but it cites no authority supporting this prophylactic rule.

The real problem with the complaint, which Corizon also asserts, is its failure to identify any wrongful act or omission by Costello. Section 6-5-551

---

[20] Section 6-5-551 has been considered a substantive provision applicable in federal court. *E.g., Warren v. Harden*, 2013 WL 1336990 at *2 n.2 (M.D. Ala. 2013), and cases cited therein. As the parties do not question this characterization, neither does the Court.

requires the complaint to include "a detailed specification and factual description of each act or omission alleged by plaintiff to render the health care provider liable," yet the complaint does not allege or even suggest that the unnamed nurse did or failed to do anything actionable. Much less does it provide a detailed specification and factual description of any such wrongful act or omission. To make matters worse, the innocuous reference to the unnamed nurse is buried in the middle of a 2½-page section of facts entitled, "Forcible Removal from 1005I Wedge to 1002F Wedge," which is the subject it mostly treats. The allegations against Callaghan and Joiner, in contrast, appear in sections styled, "Triage on the Morning of April 11, 2010" and "Failure to Provide Appropriate Mental Health Care" – titles which alert the reader that their conduct is being challenged.

The plaintiff shrugs off Corizon's objection, pointing to the 17 different ways Counts Six and Seven allege that Corizon breached the standard of care under AMLA. In particular, the plaintiff stresses that these counts accuse Corizon of "failing to appreciate and act upon Hall's psychiatric and physical condition from April 10, 2010 through April 12, 2010." (Doc. 115 at 9; Doc. 1 at 22, 24). That is certainly an overarching theme of the complaint, but it does not amount to a "detailed specification" of what Costello did or did not do, and it certainly does not constitute a "factual description" of Costello's wrongful conduct.

The plaintiff next suggests this Court has previously held that Section 6-5-551 does not apply to omissions, only to acts. (Doc. 115 at 20). What the Court ruled in *Betts v. Eli Lilly & Co*., 435 F. Supp. 2d 1180 (S.D. Ala. 2006), is that the statutory requirement to identify *time and place* is limited to acts, not omissions. *Id*. at 1189. Nothing in *Betts* remotely supports the proposition that a plaintiff need not provide the "detailed specification and factual description of each act and omission alleged" by the plaintiff as a basis of the defendant's liability, as the statute explicitly demands.

Finally, the plaintiff insists that, even if his pleading as to Costello was poor, it provided Corizon the "fair notice" required by *Mikkelsen v. Salama*, 619

So. 2d 1382 (Ala. 1993). (Doc. 115 at 20). His reasoning appears to be that, when the defendant is an entity, Section 6-5-551 is satisfied by glittering generalities about the entity, without any need to address the conduct of the individual for whose wrong the entity may be liable. But this position is in irreconcilable tension with the statute, which mandates the requisite specificity with respect to "each act and omission alleged by plaintiff to render the health care provider liable to plaintiff." Because it is Costello's acts or omissions that supposedly render Corizon liable, the complaint must satisfy the statute with respect to Costello directly. As discussed above, it does not do so.

Corizon also argues that the remaining counts, though not subject to Section 6-5-551, inadequately plead agency because they do not allege facts showing that Costello was Corizon's agent, that she was acting in the line and scope of her authority, and that the injury to Hall was the proximate result of her misconduct. (Doc. 98 at 9). The threshold, dispositive problem with this argument is Corizon's failure to show that – or even consider whether – the Alabama pleading rules on which it relies apply in federal court. With respect to the plaintiff's state claim under Count Five, Corizon would be required to demonstrate that the Alabama pleading rules are "substantive" for purposes of the *Erie* doctrine, and that would be a difficult undertaking.[21] With respect to the plaintiff's federal claim under Count Three, Corizon has not even that possibility.

## CONCLUSION

For the reasons set forth above, Joiner's motion for summary judgment is **denied** in its entirety. Callaghan's motion for summary judgment is **granted** with

---

[21] *See, e.g., Follenfant v. Rogers*, 359 F.2d 30, 32 (5th Cir. 1966) ("In matters of pleading, federal courts are not governed by the state practice, but by the Federal Rules of Civil Procedure."); *accord* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 1204 (3rd ed. 2013) ("The manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of the substantive law to be applied in the particular action.").

respect to Count Two and is in all other respects **denied**.  Corizon's motion for summary judgment is **granted** to the extent that the plaintiff may not attempt to establish that Corizon is liable under Count Six or Count Seven for any alleged act or omission of Carol Costello.  In all other respects, Corizon's motion for summary judgment is **denied**.

DONE and ORDERED this 5th day of July, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE